J. F. LANE, Plaintiff, *v.* STEVE J. KEMACK, Defendant.

Supreme Court, Cortland County, March 25, 1930.

*H. L. Bronson*, for the plaintiff.

*T. E. Courtney*, for the defendant.

SENN, J.    The plaintiff is a dealer in horses and has been for about twenty-five years.    On or about April 4, 1927, he sold a team of horses to the defendant.    The price was $300, for which defendant turned in a horse at $125 and gave his promissory note of $175 payable three months from date, at which time defendant paid $25 and interest and renewed the note for $150.    On September 4, 1927, the note was again renewed for $150.    No part of this has been paid and the action is brought to recover the amount of the note and interest.

At the time of purchasing the team the defendant was a farm worker and had a contract to do team work on a highway.

Plaintiff warranted the team to be sound and fit for defendant's work.    Defendant purchased in reliance on this warranty.

Soon after the sale it was discovered that one of the horses was ill.    A veterinarian was called who treated the horse from time to time.    According to his testimony it was a very sick horse.    On February 17, 1928, it had to be killed.    The veterinarian diagnosed the disease as thrombo embolic colic.    On a *post mortem* he found a big aneurism in the anterior mesenteric arteries; found several worms and general conditions which he claimed corroborated his original diagnosis of an embolism, an enlargement of the artery that leads backward from the heart.    His diagnosis was more or less dissented from by a veterinarian called for the plaintiff, but I cannot escape the conviction that from the beginning the horse in question was seriously diseased and unfit for the work intended, and that this must have been known to the plaintiff.

Under section 130 of the Personal Property Law (as added by Laws of 1911, chap. 571) the acceptance of the team by the defendant does not bar his right to counterclaim for his damages. He testified that when he purchased the team he noticed that one horse hung its head down and that he called the plaintiff's attention to it, that plaintiff said he would make it right if the horse was not all right, and that on the third day and subsequently he went to plaintiff's place of business and told him he was not satisfied with the horse and wanted to return it; that plaintiff then and from time to time assured defendant that it would be made right, if necessary by exchanging horses, and that it was in reliance on this assurance that he made the payments and renewals. Plaintiff denied all this and testified that the horse was sound when sold by him and that the first he knew that the defendant made any claim that the horse was not all right was in the fall of the year when he refused defendant's request to renew the note. I would be perplexed as to which version to accept in this respect, but in view of plaintiff's denial of the seemingly obvious fact that the horse was ailing when sold, I am inclined to believe the defendant.

It is true that when he wanted more time to pay his note the defendant wrote a letter to the plaintiff in which no mention was made of the alleged breach of warranty. Ordinarily, I would feel that the letter was inconsistent with defendant's claim, but being a very illiterate man of foreign birth, he may have been impressed with the fact that the note was in a bank and may have thought it unwise to mention the breach of warranty when asking a favor. Whatever his attitude in that regard it seems plain to me that there was a breach of warranty as to the one horse and that the defendant was damaged in an amount equal to the balance due on the note. The complaint should be dismissed.